FILED
2021 MAR 15 AM 9:50
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| HEATHER M., <br><br>     Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Acting Commissioner of Social Security, <br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:20-cv-00123-DAO <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Heather M.[1] filed this action asking the court to remand the Acting Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (*See* Pl.'s Opening Br. 1, Doc. No. 17.) The Administrative Law Judge ("ALJ") determined Ms. M. did not qualify as disabled. (Certified Tr. of Admin. R. (hereafter "Tr. __") 41, Doc. No. 8.) After careful review of the entire record and the parties' briefs,[2] the court[3] REVERSES and REMANDS the Commissioner's decision for the reasons set forth below.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court will refer to the Plaintiff only by her first name and last initial.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

[3] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. No. 13.)

<u>STANDARD OF REVIEW</u>

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration.  This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence.  42 U.S.C. § 405(g).  The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it." *Id.* (internal quotation marks omitted). Rather than mechanically accepting the ALJ's findings, the court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991)).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being

supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition, the court reviews whether the ALJ applied the correct legal standards. The court may reverse where the ALJ fails to do so. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis."). Sufficient grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (citation omitted).

<u>APPLICABLE LAW</u>

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-part sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

3

2)  The claimant has a medically severe physical or mental impairment;

3)  The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4)  The claimant possesses a residual functional capacity to perform his or her past work; and

5)  The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden, in the first four steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

## PROCEDURAL HISTORY

Ms. M. protectively filed applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI on August 15, 2016, alleging disability beginning on December 1, 2015.  (*See* Tr. 28, 316–30.)  Ms. M. claimed disability based on a number of impairments including fibromyalgia, congenital rickets, paresthesia, loose teeth, anxiety, depression, and poor memory.  (Tr. 358.)  After an administrative hearing, (Tr. 86–115), the ALJ issued an unfavorable decision on January 18, 2019, finding Ms. M. was not disabled, (Tr. 25–47).  Ms. M. appealed the decision, and the Appeals Council denied review. (Tr. 1–7.)

At step two of the sequential evaluation, the ALJ found Ms. M. had the following severe impairments: obesity, bilateral knee arthropathy, major depressive disorder, generalized anxiety

4

disorder, and post-traumatic stress disorder.  (Tr. 31.)  The ALJ found Ms. M.'s alleged fibromyalgia and rickets were not medically determinable impairments based on the record before him.  (Tr. 31.)  At step three, the ALJ found Ms. M.'s impairments did not meet or equal an impairment listing.  (Tr. 31.)  At step four, the ALJ found Ms. M. had the residual functional capacity to perform medium work, except she could "frequently kneel, crouch, crawl, and climb ramps and stairs" and "would be limited to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, and only occasional interaction with the public."  (Tr. 33.) This included the ability to "lift, carry, push or pull no more than 50 pounds at a time and frequently lift, carry, push or pull objects weighing up to 25 pounds" and "stand or walk off-and-on for a total of about six hours during an eight-hour workday."  (Tr. 33.)  The ALJ found Ms. M. was unable to perform any past relevant work.  (Tr. 39.)  At step five, however, the ALJ determined Ms. M. was able to perform other jobs in the national economy.  (Tr. 40.)  Therefore, the ALJ found Ms. M. was not disabled from the alleged onset date of December 1, 2015, through the date of the decision.  (Tr. 41.)

Ms. M.'s August 2016 application was her second application for disability benefits.  Ms. M. previously applied for DIB and SSI in 2011 and received a partially favorable decision on August 27, 2014.  (Tr. 116–39.)  The ALJ in that case found Ms. M.'s severe impairments included "rickets with leg-length discrepancy."  (Tr. 124.)  The ALJ found Ms. M.'s mental impairments met a listing during the period from July 1, 2011 through October 31, 2013; therefore, she was disabled during that period.  (Tr. 125–27.)  The ALJ found Ms. M.'s mental condition improved on November 1, 2013, and she no longer met listing as of that date.  (Tr. 127–28.)  Beginning on that date, the ALJ found Ms. M. had a residual functional capacity to

perform light work with certain exceptions and limitations, including that she could "stand and/or walk for a to stand and/or walk for a total of 2 hours and sit for a total of 6 hours of an 8-hour workday"; she was "unable to climb ladders, ropes, or scaffolds"; she was "unable to use the lower extremities to operate foot controls"; she was "able to occasionally climb stairs and ramps, balance, stoop, and crouch"; and she was "unable to kneel or crawl." (Tr. 129.)  The ALJ found she was able to perform jobs in the national economy beginning November 1, 2013, and was not disabled as of that date.  (Tr. 132–33.)

ANALYSIS

Ms. M. contends the ALJ erred by (1) finding her rickets and fibromyalgia were non-medically determinable impairments, and (2) failing to properly consider the medical opinions of her treating physician, Dr. Fukushima.  (Pl.'s Opening Br. 8–13, 16–24, Doc. No. 17.)

## A. Non-Medically Determinable Impairments

### 1. Rickets

At the administrative hearing, the ALJ asked Ms. M.'s attorney whether the record contained a diagnosis of rickets.  (Tr. 100.)  Ms. M.'s attorney pointed to the findings in the 2014 decision and mental health records referring to rickets as part of Ms. M.'s medical history.  (Tr. 100–02.)  However, the ALJ stated he was not bound by the earlier decision, and Ms. M.'s attorney was unable to identify a diagnosis for rickets during the claim period at issue.  (Tr. 101–02.)  Ms. M. then testified that she was born with congenital rickets and had been "dealing with it [her] whole life."  (Tr. 102.)  She explained it caused problems with her legs for which she had reconstructive surgeries at various ages.  (Tr. 102–03.)  She testified that she continued to suffer from osteoarthritis due to congenital rickets since the onset date of December 2015, and that her left leg was longer than her right leg.  (Tr. 103–04.)

6

In his decision, the ALJ found rickets to be a non-medically determinable impairment because "the medical evidence of record lacks evidence of bone deformities, other than her short stature, that are indicative of rickets." (Tr. 31.) In support of this finding, the ALJ cited an emergency room record from May 2016 noting "no obvious [musculoskeletal] deformity." [4] (Tr. 538, 654.)

Ms. M. argues the ALJ's finding violated the doctrine of res judicata because it contradicted the findings in the 2014 decision that rickets was a severe impairment and that she was limited to a reduced range of light work. (Pl.'s Opening Br. 19–20, Doc. No. 17.) Ms. M. also argues the ALJ erred by failing to consider evidence regarding rickets from her prior claim file or take other steps to develop the record as to this impairment. (Pl.'s Opening Br. 16–22, Doc. No. 17.)

a. *Res Judicata*

"Res judicata may apply in a social security case when a previous determination is made about the claimant's rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action." *Gonzales v. Colvin*, 515 F. App'x 716, 720 (10th Cir. 2013) (unpublished) (internal quotation marks omitted). However, the findings from a prior decision are binding only as to the time period of the claimant's eligibility during the prior application, and they have no effect on a second application for a later time period. *See id.* at 721.

Here, the prior decision addressed whether Ms. M. was disabled only through the date of the decision—August 27, 2014. (*See* Tr. 133–34.) By contrast, the ALJ's decision in the current

---

[4] Although the ALJ cited two different exhibits, the pages cited are duplicates of the same medical record. (*See* Tr. 538, 654.)

case addressed Ms. M.'s claim for benefits for the period beginning on December 1, 2015.  (*See* Tr. 28.)  Because the 2014 decision covered a different time period, the doctrine of res judicata does not apply, and the findings from the 2014 decision were not binding on the ALJ in this case.

       *b.   Development of the Record*

       Although "the burden to prove disability in a social security case is on the claimant," the ALJ is "responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  The Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX)[5] provides that an ALJ may consider evidence from a prior claim file when "necessary for a full adjudication of the issues before the ALJ."  HALLEX I-2-1-13, https://www.ssa.gov/OP_Home/hallex/hallex-I.html.  This generally occurs when the ALJ determines "[t]here is a need to establish a longitudinal medical, educational, or vocational history; or [t]he impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether disability is present in the current claim."  *Id.*  Additionally, Social Security Ruling (SSR) 16-3p provides that where there is "insufficient evidence to determine whether an individual has a medically determinable impairment that could potentially account for his or her alleged symptoms," the ALJ will "develop evidence regarding a potential medically determinable impairment using a variety of means set forth in [the agency's] regulations."  SSR 16-3p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html.  This includes obtaining information from the claimant regarding testing or treatment, requesting

---

[5] The HALLEX is "a set of internal guidelines for processing and adjudicating claims under the Social Security Act."  *Social Sec. Law Center, LLC v. Colvin*, 542 F. App'x 720, 722 n.3 (10th Cir. 2013) (unpublished).

clarifying information from the claimant's medical sources, or sending the claimant to a consultative examination. *Id.*

Here, the ALJ failed to adequately develop the record with regard to Ms. M.'s claimed impairment of congenital rickets. Ms. M. testified she was born with congenital rickets which had caused problems with her legs since childhood, had required numerous surgeries, and continued to affect her after the alleged onset date. (Tr. 102–04.) Moreover, the 2014 decision on her prior claim found this condition to be a medically determinable, severe impairment which impacted her residual functional capacity, citing medical evidence which was not part of the claim file in the current case. (Tr. 124, 129–30.) Although the prior decision was not binding on the ALJ in this case, the evidence from the prior claim file was relevant to Ms. M.'s longitudinal history of congenital rickets and could have made a difference in establishing whether disability was present in the current claim. Indeed, although the ALJ appeared concerned about the lack of a formal diagnosis of rickets in the record before him, (*see* Tr. 100–02), he failed to assess whether the prior claim file contained diagnostic or other evidence supporting a finding that rickets was a medically determinable impairment. Where Ms. M. alleged a long-term congenital condition which was found to be a severe impairment in a prior claim, the ALJ was obligated to further develop the record on this issue, including reviewing relevant evidence from the prior claim file.

The Commissioner argues the ALJ was not required to further develop the record because there was sufficient evidence for the ALJ to make a determination on Ms. M.'s claim of disability in this case. (Def.'s Answer Br. 8, Doc. No. 20.) However, the ALJ's rationale for excluding this impairment was a lack of evidence in the record: he stated "the medical evidence of record lacks evidence of bone deformities, other than her short stature, that are indicative of

rickets." (Tr. 31.)  In support of this, the ALJ relied on a single record from a 2016 emergency room visit which noted "no obvious [musculoskeletal] deformity."  (Tr. 31; *see also* 538, 654.) But there is no indication Ms. M. was being evaluated for rickets when this observation was made, and the ALJ cited no authority for the proposition that this observation was inconsistent with a diagnosis of rickets.  Indeed, the record shows Ms. M. was at the emergency room to address a complaint of muscle and nerve spasms.  (Tr. 537.)  In light of this, this single record was insufficient for the ALJ to make a finding regarding the existence of a medically determinable impairment, particularly where the alleged impairment was a long-term congenital condition.  And to the extent the medical record lacked other evidence supporting a rickets diagnosis, this was due to the ALJ's failure to adequately develop the record, as was necessary to fully adjudicate the issue.

The Commissioner also appears to argue any error was harmless because Ms. M. does not identify additional limitations arising from her diagnosis of rickets, and because the prior decision found this impairment was not disabling.  (Def.'s Answer Br. 8–9, Doc. No. 20.) However, Ms. M. argues the ALJ erred in finding she had a residual functional capacity for medium work.  (Pl.'s Opening Br. 3, Doc. No. 17.)  The ALJ made this finding without considering evidence from the prior claim file, and the court cannot determine how this additional evidence may affect the residual functional capacity determination.  Moreover, the prior decision's finding that Ms. M. was not disabled based on the combination of impairments existing in 2014 is not determinative of whether Ms. M. was disabled after December 2015.

For the reasons set forth above, the court remands for further development of the record regarding Ms. M.'s claimed impairment of congenital rickets, including consideration of Ms. M.'s prior claim file.  The ALJ shall reconsider whether congenital rickets was a medically

determinable severe impairment and any resulting impact on Ms. M.'s residual functional capacity based on the additional evidence.

2.  Fibromyalgia

The Social Security Administration considers fibromyalgia to be a medically determinable impairment if a physician diagnoses fibromyalgia and a claimant has all three of the following criteria: (1) a "history of widespread pain," (2) "[a]t least 11 positive tender points on physical examination," or "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions," and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded."  SSR 12-2p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2012-02-di-01.html.

The ALJ found fibromyalgia was not a medically determinable impairment because "the record does not include evidence of at least 11 positive tender points on physical examination or of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions," and because "the record does not include any evidence of exclusion of other disorders that could cause the symptoms."  (Tr. 31.)

Ms. M. asserts the ALJ's findings as to the first two criteria were contrary to the record, but she does not challenge his finding that the third criteria was not met.  (*See* (Pl.'s Opening Br. 9–10, Doc. No. 17.)  Because the absence of the third criteria is sufficient, on its own, to support the ALJ's finding that fibromyalgia was not a medically determinable impairment, Ms. M. has failed to show this finding was erroneous.

**B.  Treating Physician's Opinion**

Ms. M. also contends the ALJ erred in his consideration of the opinion of her treating surgeon, Dr. Fukushima, regarding her functional limitations following two knee surgeries he

performed in 2018.  (Pl.'s Opening Br. 23–24, Doc. No. 17.)  Because the court has ordered the

ALJ to consider additional evidence on remand which was not part of the record when the ALJ

evaluated Dr. Fukushima's opinion, the court need not determine whether the ALJ's original

evaluation was adequate.  On remand, the ALJ shall reconsider the medical opinion evidence,

including Dr. Fukushima's opinion, in light of the additional evidence from Ms. M.'s prior claim

file.

CONCLUSION

For the foregoing reasons, the court REVERSES the Commissioner's decision and

REMANDS for further administrative proceedings consistent with this order.

DATED this 15th day of March, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

.